IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUTOMOBILE MECHANICS' LOCAL 701, )
INTERNATIONAL ASSOCIATION OF )
MACHINIST AND AEROSPACE WORKERS, )
AFL-CHI OF CHICAGO AND VICINITY, )
)
      Plaintiff, )
)
vs. ) Case No. 11 C 4879
)
ED NAPLETON OAK LAWN IMPORTS, )
INC., d/b/a Ed Napleton Honda and )
d/b/a Ed Napleton Honda of Oak Lawn, )
)
      Defendant. )

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

      Plaintiff Automobile Mechanics' Local 701, International Association of Machinists and Aerospace Workers, AFL-CIO, of Chicago and Vicinity (Local 701) has moved to confirm and enforce an arbitrator's award issued in an arbitration between Local 701 and Ed Napleton Oak Lawn Imports, Inc. (Napleton Honda). Napleton Honda has cross-moved to vacate or modify the arbitrator's award. For the reasons stated below, the Court grants both motions in part and denies them in part..

**Background**

      Napleton Honda and Local 701 are parties to a collective bargaining agreement (CBA). On April 27, 2011, Phil Savaglio, a member of Local 701 who had worked at Napleton Honda for over twenty-two years, had a dispute with another employee, Robert Sykes, over a work assignment. Frustrated, Savaglio told Sykes, "What do I

have to do to get you guys to understand, bring a gun down here and shoot (somebody) up here tomorrow?" Ex. 1, p. 6. Another employee, Louis Ortiz, overheard the statement and reported it to the service department's manager, Spano. Spano investigated the incident and met with Sykes. Sykes told Spano that he did not feel threatened or afraid and that he did not think Savaglio had meant anything serious but rather was just trying to get a point across. Sykes said he thought Ortiz had taken Savaglio's statement out of context.

Shortly afterward, the Oak Lawn police arrived, saying someone had reported Savaglio's threat. They spoke with Savaglio and Spano and left without a complaint being filed. At the time, no one was aware of who had called the police. An internal company memo later reported that while the police were interviewing Savaglio, Ortiz was observed laughing about the incident with two other employees.

Later that afternoon, General Manager Ed Napleton, Jr. met with Savaglio. Napleton told Savaglio that "he could not say those words," issued him a verbal warning, and suspended him from work for one day. Savaglio met with Napleton and Spano again the next day. Napleton said he was issuing a written warning and a one day suspension. Before this meeting, Spano had spoken with a Local 701 representative. Savaglio said he was willing to take a week off, but management said that was not necessary.

The original intention was for Savaglio to serve his suspension the next day, April 29. However, he was working on a big job, and Napleton and Spano decided it would be best for Savaglio to finish that job. Savaglio then planned to serve the suspension on May 2, but Spano said Savaglio was needed for work that day and should serve the

2

suspension on May 3 instead. Savaglio served the suspension on May 3, 2011.

On May 12, Savaglio was summoned to corporate headquarters in Westmont, Illinois. There he met with Ed Napleton Sr. and chief financial officer Bruce Etheridge. The three men discussed the April 27 incident, and Savaglio was asked to resign. He refused to do so and was terminated. effective immediately.

Local 701 filed a grievance, alleging that the discharge was improper and without just cause. The parties were unable to resolve the grievance, and, consistent with the CBA, an arbitration hearing was held on May 27, 2011.

At the hearing, Napleton Honda argued that it would be "negligent retention" to keep Savaglio at work. It also argued – apparently anticipating a "double punishment" argument – that the warning letter and the suspension had been issued prematurely. Napleton Honda contended the appropriate corporate procedure would have been to consult with corporate headquarters and that Ed Napleton Sr. had properly terminated Savaglio when he became aware that the incident had been reported to the local police. Local 701 argued that Savaglio had been properly disciplined when he received the warning letter and served the suspension and that it was improper for the company to discharge him two weeks later, after he had already been disciplined for the incident.

After the hearing, the arbitrator made the following findings: (1) the initial warning letter was proper under the CBA, in part because it had been issued under the authority of Ed Napleton Jr., the dealership's general manager; (2) Local 701 challenged only the duplicative disciplinary measure, not Savaglio's culpability; (3) given the findings of Napleton Honda's investigation into the incident, including its determination that no threat was intended, the warning letter and the suspension constituted proper and

3

appropriate discipline.

Based on these findings, the arbitrator determined that Savaglio's discharge constituted "double jeopardy" for the incident and was therefore improper and unjust, as well as untimely. The arbitrator directed Napleton Honda to reinstate Savaglio with full rights and benefits and to compensate him for all lost income.

Napleton Honda refused to comply with the order and later filed a police report, initiating a criminal charge. When Savaglio went to court, a judge imposed a condition of bond requiring Savaglio to stay away from the Napleton Honda work premises.

In the present case, Local 701 requests an order confirming and enforcing the arbitrator's award, pursuant to section 301(a) of the Labor-Management Relations Act, 29 U.S.C. §185(a), and the Federal Arbitration Act (FAA), 9 U.S.C. § 9 . Napleton Honda asks this Court to vacate or modify the arbitrator's award, arguing that reinstating Savaglio would subject it to liability for negligent retention and would also run afoul of the bond order in Savaglio's criminal case.

## Discussion

The FAA authorizes vacating an arbitration award for any of four specific reasons, which "neither judges nor contracting parties can expand." *Affymax, Inc. v. Ortho-McNeil-Janssen Pharms., Inc.*, --- F.3d ---, 2011 WL 4634222, at *2 (7th Cir. Oct. 3, 2011). "Disregard of the law is not on the statutory list." *Id.* Thus, a court does "not- and will not-review arbitral awards for legal or factual error." *Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008).

A court may set aside an arbitration award "that directs the parties to violate the legal rights of third persons who did not consent to the arbitration." *Id.* Except to this

4

extent, disregard of the law "is not a ground on which a court may reject an arbitrator's award under the Federal Arbitration Act." *Id.* at *3.

These same rules apply, perhaps with some nuanced variation, in the context of labor arbitrations like this one. If an arbitrator even arguably construes or applies a CBA and acts within the scope of his authority, the fact that a court might believe he committed an error does not permit the court to overturn the arbitrator's decision. "It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Int'l Union of Operating Engineers, Local 139, AFL-CIO v. J.H. Findorff & Son*, 393 F.3d 742, 745 (7th Cir. 2004) (internal quotation marks and citations omitted).

Napleton Honda argues that given Savaglio's apparent threat of violence, reinstating him places its employees at risk and the company in jeopardy of litigation for negligent retention. Napleton Honda advanced this argument in the arbitration without success. The arbitrator found that Napleton Honda's professed fear was unwarranted and did not excuse the fact that Savaglio's discharge was an unjust double punishment.

Napleton Honda's argument does not bring into play any of the reasons for setting aside an arbitral award found in the FAA. Even if "disregard of the law" is a basis for overturning an arbitration decision, the arbitrator did not deliberately disregard what he knew to be the law, and he did not simply impose his own view of what was just. *Health Servs. Mgmt. Corp. v. Hughes,* 975 F.2d 1253, 1267 (7th Cir. 1992). Rather, the arbitrator's conclusion was based on a finding that the initial discipline—the warning letter and suspension—constituted an adequate remedy under the CBA. The

5

arbitrator was interpreting the CBA. Even if a court might disagree with that interpretation, that is not a basis to overturn the arbitrator's decision. *Polk Bros., Inc. v. Chicago Truck Drivers Union*, 973 F.2d 593, 597 (7th Cir. 1993).

Napleton Honda also argues that the arbitration award is contrary to an earlier award involving the same parties and the same arbitrator. That earlier arbitration proceeding involved Napleton Honda's discharge of an employee named Santucci, who told a fellow employee that was "going to blow [the] place up if anything happens to me – and you'll have to pick up the pieces." In that case, the arbitrator found that Napleton Honda had just cause to discharge the employee. Santucci's case, however, did not involve an issue of double discipline for the same violation, which was the keystone of the arbitrator's decision in the present case.

In any event, this Court does not review whether the arbitrator's award is consistent with earlier decisions, but whether the award draws its essence from the CBA. *Ethyl Corp. v. United Steelworkers of Am., AFL-CIO-CLC*, 768 F.2d 180, 184-85 (7th Cir. 1985). In this case it did.

To the extent Napleton Honda suggests that the arbitrator's conclusion that just cause does not include double discipline is a conjured-up notion that is drawn from something other than an interpretation of the CBA, the Court disagrees. As Local 701 notes, the arbitrator's interpretation is supported by ample arbitration authority. *See, e.g., Kingsford Mfg. Co.,* 126 Lab. Arb. (BNA) 1137, 2009 WL 2766786 (Smith, 2009) ("Disciplining an employee twice for the same act constitutes double jeopardy and is a due process basis for invalidating the discipline. The double jeopardy doctrine prohibits employers from attempting to impose multiple punishments for what is essentially a

6

single act"); *Mason County, Wash.*, 124 Lab. Arb. (BNA) 92, 2007 WL 2875301 (Smith, 2007) (noting that "by itself" a second punishment for the same incident requires sustaining a grievance brought pursuant to a just cause provision).

For these reasons, Napleton Honda has offered no proper basis to vacate the arbitrator's decision. That said, strict enforcement of the arbitrator's order to reinstate Savaglio on the job would run afoul of the state court's bond order, which barred Savaglio from entering his workplace. Even though that ruling came after the arbitrator's decision, and even though there is some reason to believe that Napleton Honda sought imposition of that restriction, strict enforcement of the reinstatement order would be contrary to the order of the criminal court judge. Out of respect for that court, the Court will modify the award in a way consistent with the arbitrator's intent. *See* 9 U.S.C. § 11; *National Post Office v. United States Postal Service,* 751 F.2d 834, 844 (6th Cir. 1985) (Stewart, J., sitting by designation) (avoiding duplicative, "meaningless rearbitration," by concluding that under 9 U.S.C. § 11 the intent of arbitrator and the interests of justice will best be promoted by ordering simply awarding back pay); *Laurin Tankers America, Inc. v. Stolt Tankers, Inc.,* 36 F. Supp. 2d 645 (S.D.N.Y. 1999) (looking beyond "the face of the award" to the arbitration proceeding to "do equity and justice," when the error or complication was not the fault of the arbitrator). Specifically, the Court will not require Napleton Honda to reinstate Savaglio while that bond condition is in place, but it will require the company to comply with the arbitrator's back pay award.

For these reasons, the Court confirms the arbitrator's award of back pay to Savaglio, along with prejudgment interest calculated at the prime rate. *See, e.g.,*

*Fischer v. Health Care Service Corp.*, 301 F.3d 811, 820 (7th Cir. 2002) (suggesting that district judges aware prejudgment interest at the prime rate if there is no statutory rate). The Court vacates the arbitrator's award to the extent it requires reinstatement of Savaglio on the job so long as he is under a condition of bond barring him from the work premises.

The Court denies Local 701's request to order Napleton Honda to reimburse Local 701's attorney's fees and expenses. The Court has declined to confirm the arbitrator's award in full, making an award of fees inappropriate. Though Napleton Honda may have procured the bond order that the Court has found precludes full confirmation of the award, if that is so, the Court cannot say that Napleton Honda acted inappropriately in doing so.

## Conclusion

For the reasons stated above, the Court grants in part and denies in part Local 701's motion to confirm the arbitration award and also grants in part and denies in part Napleton Honda's motion to vacate or modify the award. The parties are directed to calculate the back pay through December 9, 2011 as well as prejudgment interest on the back pay and are to present a proposed form of judgment order to the Court by no later than December 8, 2011.

```
                                   _____
                                        MATTHEW F. KENNELLY
                                        United States District Judge
```

Date: December 5, 2011